UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Cynthia R. Morrison,

Plaintiff,

v.

Sara Rose, Jenny Rennquist, Michael E. Anderson, and Minnesota Department of Human Services,

Defendants.

File No. 26-cv-1553 (ECT/DJF)

**OPINION AND ORDER**

---

Cynthia R. Morrison, pro se.

Margaret E. Jacot, Minnesota Attorney General's Office, St. Paul, Minnesota, for Defendants Sara Rose, Jenny Rennquist, Michael E. Anderson, and Minnesota Department of Human Services.

---

Pro se Plaintiff Cynthia R. Morrison has filed suit alleging employment discrimination against her employer, the Minnesota Department of Human Services ("DHS"), and DHS employees Sara Rose, Jenny Rennquist, and Michael E. Anderson. Defendants filed a motion to dismiss Ms. Morrison's original Complaint. Having missed the deadline to amend her Complaint as a matter of course, Ms. Morrison filed a motion to amend her Complaint, which Defendants oppose. Because Ms. Morrison's original Complaint fails to plausibly state a claim, and her Proposed Amended Complaint does not resolve the insufficiencies in her original Complaint, Defendants' motion to dismiss will be granted, and Ms. Morrison's motion to amend will be denied due to futility.

I

A

Begin with the relevant, suit-prompting factual allegations in Ms. Morrison's original Complaint.[1] Ms. Morrison is over the age of forty. ECF No. 1-1 ¶ 1. In 2022, she "received a positive annual performance review" indicating "satisfactory performance and fulfillment of job duties." *Id.* ¶ 2. On August 3, 2023, Ms. Morrison told her supervisor and human resources that "her job description did not accurately reflect her core responsibilities and requested a reevaluation." *Id.* ¶ 3. On August 14, Ms. Morrison "submitted a formal job reclassification request to [h]uman [r]esources after reviewing her position description." *Id.* ¶ 4. Human resources did not confirm receipt of Ms. Morrison's request and "did not process the request in a timely manner." *Id.* ¶ 5. Between August 2023 and the beginning of 2024, Ms. Morrison continued to inquire about the status of her request, but she did not receive a "substantive response or resolution." *Id.* ¶ 6. She discovered that documentation relating to her reclassification request was missing from human resources' records. *Id.* ¶ 7. An informal review of Ms. Morrison's position was eventually initiated, although the "core duties" Ms. Morrison was performing were not evaluated as part of that review. *Id.* ¶ 8. Ms. Morrison "observed that other employees performing similar duties were classified at higher levels." *Id.* ¶ 9. "A comparison of [Ms. Morrison's] performance evaluations reflects a shift from positive assessments to negative evaluations following protected activity." *Id.* ¶ 10. The Complaint does not specify what

[1] The Complaint comprises a fillable form, ECF No. 1, and addendum, ECF No. 1-1.

Ms. Morrison believes is the "protected activity." *See id.* On April 9, 2024, human resources concluded its review of Ms. Morrison's position "without reference to [Ms. Morrison's] annual work plan," and did not change Ms. Morrison's job classification. *Id.* ¶ 11. "Beginning in July 2024, [Ms. Morrison] was removed from internal communication and collaboration platforms necessary to perform her duties, resulting in exclusion from team communications." *Id.* ¶ 12. "From 2025 through 2026, [Ms. Morrison] was excluded from work-planning meetings and professional opportunities related to her role." *Id.* ¶ 16. "Pay comparison documentation from 2023 through 2026 reflects disparities between [Ms. Morrison's] compensation and that of other employees performing comparable or lesser duties." *Id.* ¶ 13. The Complaint further alleges that "[o]rganizational records reflect changes in structure and classification that were inconsistent with [Ms. Morrison's] actual duties and responsibilities." *Id.* ¶ 14. On November 13, 2025, the official description for Ms. Morrison's job was changed such that "core duties" she had performed previously were "remove[d] or downgrade[d]." *Id.* ¶ 15. "Throughout the relevant period, [Ms. Morrison] continued to perform higher-level duties without appropriate classification or compensation and experiences ongoing delays, exclusions, and refusal to correct documented inaccuracies." *Id.* ¶ 17.

Ms. Morrison asserts four claims:[2] (1) Under the Age Discrimination in Employment Act ("ADEA"), Ms. Morrison claims she was subjected to age discrimination.

---

2 With checkboxes, the Complaint invokes Title VII and indicates Ms. Morrison believes she was discriminated against based on her race. ECF No. 1 ¶¶ 3, 9. However, in her brief opposing the motion to dismiss, Ms. Morrison clarified that this was a "clerical error," and she is not asserting a claim for race discrimination. ECF No. 20 n.1.

*Id.* ¶¶ 18–26 (Count I). (2) Under the ADEA, Ms. Morrison claims she was subjected to a hostile work environment. *Id.* ¶¶ 27–31 (Count II). (3) Under the ADEA, Ms. Morrison asserts a claim of retaliation for engaging in protected activity. *Id.* ¶¶ 32–36 (Count III). (4) Under the Equal Pay Act ("EPA") and the ADEA, Ms. Morrison claims she was paid less than other employees performing comparable or lesser duties. *Id.* ¶¶ 37–40 (Count IV). For relief, Ms. Morrison seeks "back pay, front pay, lost benefits, compensatory damages, equitable relief, and any other relief the Court deems just and proper." *Id.* ¶ 41.

B

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept a complaint's well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* A Rule 12(c) motion for judgment on the pleadings is assessed under the same standard as a Rule 12(b)(6) motion to dismiss. *Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

Because she is pro se, Ms. Morrison's Complaint is entitled to liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "[H]owever inartfully pleaded," pro se complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson*, 551 U.S. at 94). "[I]f the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004)). The liberal-construction rule does not excuse a pro se plaintiff from alleging sufficient facts to support the claims she advances. *Stone*, 364 F.3d at 914. And notwithstanding the liberal-construction rule, "pro se litigants are not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984); *see Sorenson v. Minn. Dep't of Corr.*, No. 12-cv-1336 (ADM/AJB), 2012 WL 3143927, at *2 (D. Minn. Aug. 2, 2012).

In adjudicating motions under Rule 12(b)(6), "courts are not strictly limited to the four corners of complaints," but may consider other matters, including "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned[ ] without converting the motion into one for summary judgment." *Dittmer Props., L.P. v. FDIC*, 708 F.3d 1011, 1021 (8th Cir. 2013) (citation modified); *see Zean v. Fairview Health Servs.*, 858 F.3d 520, 526–27 (8th Cir. 2017) (explaining that consideration of matters outside the pleadings or evidence in opposition to the pleadings generally converts a Rule 12(b)(6) motion into one for summary

judgment). At the same time, Rule 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a)(2) is a procedural pleading requirement that "has the force of law." *Gurman v. Metro Hous. & Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1152 (D. Minn. 2011). "It is not the Court's responsibility to mine [exhibits attached to the complaint] for 'nuggets that might refute obvious pleading deficiencies,' even if [a plaintiff] is without counsel." *Joiner v. Hennepin Cnty. Bd.*, No. 17-cv-1452 (JNE/DTS), 2017 WL 3738456, at *2 (D. Minn. Aug. 30, 2017) (quoting *Neubauer v. FedEx Corp.*, 849 F.3d 400, 404 (8th Cir. 2017)).

Ms. Morrison filed nearly 300 pages of exhibits with her Complaint. *See* ECF Nos. 1-2 to 1-20. One of the exhibits, an Equal Employment Opportunity Commission ("EEOC") notice of right-to-sue letter, ECF No. 1-2, is referenced in the Complaint, ECF No. 1 ¶ 6. This letter will be considered because it is embraced by the pleadings. *See Zean*, 858 F.3d at 526–27. However, Ms. Morrison seeks to rely on the remaining exhibits to incorporate facts missing from the Complaint. *See* ECF No. 20. Rule 8 does not allow this. Neither the Court nor Defendants can reasonably be expected to review these many pages of exhibits to search for facts on which Ms. Morrison might seek to rely to support her claims. *See Joiner*, 2017 WL 3738456, at *2 (declining to search through 80 pages of exhibits to find facts to support plaintiff's claims); *see also Ploetz v. Winona Cnty.*, No. 25-cv-3665 (LMP/DJF), 2025 WL 3567868, at *1 n.1 (D. Minn. Sept. 30, 2025), *aff'd*, No. 25-3414, 2026 WL 1601752 (8th Cir. Feb. 27, 2026) (refusing to "construct legal arguments for [plaintiff]" from the nearly 200 pages of exhibits attached to his complaint).

Defendants' Rule 12(b)(6) motion will be decided based on the facts alleged in the Complaint, not on facts drawn from the exhibits attached to the Complaint.[3]

C

1

Before turning to Ms. Morrison's individual claims, two broadly applicable issues raised by Defendants must be addressed. (a) Ms. Morrison's Complaint fails to attribute any of the complained-of actions to the Defendants. *See* ECF Nos. 1, 1-1. A plaintiff must "allege facts supporting [an] individual defendant's personal involvement or responsibility for the violations." *Ellis v. Norris*, 179 F.3d 1078, 1079 (8th Cir. 1999); *see also Tatum v. Iowa*, 822 F.2d 808, 810 (8th Cir. 1987) (holding a plaintiff's complaint was appropriately dismissed where he failed "to plead how the defendants [were] responsible to him for his equal protection claim"); *McDonald v. Overnite Exp.*, No. 08-cv-5069 (JNE/JSM), 2009 WL 3517976, at *7 (D. Minn. Oct. 26, 2009) (dismissing complaint where there was "no mention [of] how [defendant] was involved in [plaintiff's] employment or how it interfered with any contractual relationship"). Ms. Morrison's Complaint lists the Defendants, ECF No. 1 at 1–2, but the Complaint's factual allegations contain no mention of any of the Defendants, *see* ECF Nos. 1, 1-1. The critical lack of any connection between the Defendants and the complained-of conduct means Ms. Morrison has failed to state a claim for relief and the motion to dismiss could be granted for just this reason.

---

[3] In support of her memorandum in opposition, Ms. Morrison filed 235 pages of exhibits. *See* ECF No. 21 to 21-13. These are duplicates of some of the exhibits attached to the Complaint. *See id.*

(b) Defendants also argue ADEA claims cannot be brought against individual defendants. ECF No. 7 at 4–5. The Complaint does not specify whether the individual defendants are sued in their individual or official capacities. *See* ECF No. 1 at 1–2. Although the Eighth Circuit has not ruled on the issue, other circuits, and many of the district courts in the Eighth Circuit, have held that individuals cannot be held individually liable for ADEA violations. *See, e.g.*, *Onyiah v. St. Cloud State Univ.*, 655 F. Supp. 2d 948, 962 (D. Minn. 2009) (collecting cases); *Davis v. Kimbel Mech. Sys., Inc.*, No. 5:16-CV-5194, 2016 WL 8737495, at *2 (W.D. Ark. Sept. 16, 2016); *Liggins v. Ohio*, 210 F.3d 372, at *2 (6th Cir. 2000) (unpublished table decision); *Morrow v. City of Jacksonville*, 941 F. Supp. 816, 820 (E.D. Ark. 1996) (collecting cases); *McConnell v. Greenfield R-IV Sch. Dist.*, No. 15-003325-CV-S-JTM, 2015 WL 5692282, at *3 (W.D. Mo. Sept. 28, 2015); *Baker v. Henson*, No. CIV. 17-5054, 2018 WL 813629, at *3 (D.S.D. Feb. 9, 2018). There is good reason to believe the Eighth Circuit would agree with these cases. Both Title VII and the ADEA impose liability on an "employer." 29 U.S.C. § 623(a) (ADEA); 42 U.S.C. § 2000e-2(a) (Title VII). Both statutes define "employer" in a "substantially identical manner." *Lenhardt v. Basic Inst. of Tech., Inc.*, 55 F.3d 377, 380 (8th Cir. 1995). *Compare* 29 U.S.C. § 630(b), *with* 42 U.S.C. § 2000e(b). Relying, in part, on cases interpreting the ADEA definition of "employer," the Eighth Circuit held that Title VII does not impose liability on supervisors and other employees in their individual capacities. *Lenhardt*, 55 F.3d at 380–81. It stands to reason that the Eighth Circuit would believe the same to be true of the ADEA. Accordingly, I find that Ms. Morrison's ADEA claims fail

to the extent that they seek to impose individual liability on Defendants Rose, Rennquist, and Anderson.

The analysis with respect to an official-capacity claim is different. "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *McConnell*, 2015 WL 5692282, at *2 (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)); *cf. Lenhardt*, 55 F.3d at 380 ("The consensus of these courts is that Title VII actions brought against individual employees are against those employees in their 'official' capacities, and that liability can be imposed only upon the common employer of the plaintiff and of the individual fellow employees who are named as defendants."). Where both employees (in their official capacities) and employers are sued under the ADEA, some courts have dismissed the claims against the employees as redundant of the claims against the employer. *See Coleman v. Mpls. Pub. Sch. SSD #1*, No. 15-cv-4419 (WMW/HB), 2016 WL 4708495, at *5 (D. Minn. July 20, 2016), *R. & R. adopted*, No. 15-CV-4419 (WMW/HB), 2016 WL 4708463 (D. Minn. Sept. 8, 2016); *McConnell*, 2015 WL 5692282, at *2. But because DHS is an agency of the State of Minnesota, there may be Eleventh Amendment implications to suing DHS directly. *See Let Them Play MN v. Walz*, 517 F. Supp. 3d 870, 878 (D. Minn. 2021) ("The Eleventh Amendment generally bars suits against 'an unconsenting State . . . brought in federal courts by her own citizens as well as by citizens of another state.'" (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S.

89, 100 (1984)). Defendants do not raise an Eleventh Amendment immunity defense,[4] nor do they argue a suit against Defendants Rose, Rennquist, and/or Anderson is duplicative of a suit against DHS. *See* ECF No. 7. At this stage, it makes better sense to understand the Complaint to assert official-capacity claims against the individual Defendants and not to dismiss these claims based on redundancy.

2

Under the ADEA, it is "unlawful for an employer to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Because Ms. Morrison has not identified direct evidence of discrimination, her age-discrimination claims eventually must be considered under the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McKey v. U.S. Bank Nat'l Ass'n*, 978 F.3d 594, 598 (8th Cir. 2020). At step one of *McDonnell Douglas*, a plaintiff must make a prima facie showing of age discrimination. *Id.* at 598–99 (citation omitted). If the plaintiff establishes a prima facie case, then the burden shifts to the defendants to articulate a "legitimate, nondiscriminatory reason" for its failure to adequately compensate her. *Id.* at 599 (citation omitted). If the defendants meet their burden, the plaintiff must show "by a preponderance of the evidence that the legitimate reasons offered by [defendants] were

---

[4] "Although Eleventh Amendment immunity is generally considered a matter of subject-matter jurisdiction that a court may raise on its own, a court is not required to do so." *Let Them Play MN*, 517 F. Supp. 3d at 878 (first citing *Fromm v. Comm'n of Veterans Affs.*, 220 F.3d 887, 890 (8th Cir. 2000) and then citing *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 389 (1998)).

not [their] true reasons, but were a pretext for [intentional] discrimination." *Aulick v. Skybridge Americas, Inc.*, 860 F.3d 613, 620–21 (8th Cir. 2017) (citation omitted).

"At the pleading stage in the discrimination context, it is unnecessary to plead enough facts to establish a prima facie case." *Ingram v. Ark. Dep't of Corrs.*, 91 F.4th 924, 927 (8th Cir. 2024) (citing *Blomker v. Jewell*, 831 F.3d 1051, 1056 (8th Cir. 2016)). Nonetheless, the prima facie case elements "remain relevant in determining the plausibility standard as the elements may be used as a prism to shed light upon the plausibility of the claim." *Id.* (citation modified). "The complaint must include sufficient factual allegations to provide the grounds on which the claim rests." *Id.* (citation modified). The law is clear that to establish a prima facie case of age discrimination on her failure-to-promote claims, a plaintiff "must show [she]: (1) was at least 40 years old; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was rejected for someone sufficiently younger to permit the inference of age discrimination." *Aulick*, 860 F.3d at 621.

Defendants challenge whether Ms. Morrison has satisfied this final element. ECF No. 7 at 8–9. I conclude she has not. Ms. Morrison has alleged that she is more than forty years old. ECF No. 1-1 ¶ 1. She has also alleged that human resources failed to reclassify her job, and she was paid less than other individuals "performing comparable or lesser duties," but, critically, the Complaint does not tie these actions to Ms. Morrison's age. *Id.* ¶¶ 11, 13. The Complaint does not allege the ages of the other employees whose jobs were classified at a higher level and received greater compensation than Ms. Morrison. *See id.* Absent any indication that Ms. Morrison was treated unfavorably as a result of her age, Ms. Morrison's ADEA claim fails.

3

To allege an ADEA hostile work environment claim, a plaintiff must show (1) that she "is a member of the class of people protected by the statute," (2) that she "was subject to unwelcome harassment," (3) "that the harassment resulted from [her] membership in the protected class," and (4) "that the harassment was severe enough to affect the terms, conditions, or privileges of [her] employment." *Moses v. Dassault Falcon Jet-Wilmington Corp*, 894 F.3d 911, 921–22 (8th Cir. 2018) (quoting *Sellers v. Deere & Co.*, 791 F.3d 938, 945 (8th Cir. 2015)). "To determine whether the harassment affected a "term, condition, or privilege of [Ms. Morrison's] employment, [a court] must consider the totality of the circumstances, including the frequency and severity of the conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with [Ms. Morrison's] job performance." *Id.* at 922 (citation modified).

Defendants contend Ms. Morrison has failed to plausibly allege that the alleged harassment resulted from her age. ECF No. 7 at 8. In support of Ms. Morrison's hostile work environment claim, the Complaint alleges that Ms. Morrison suffered "ongoing exclusion, including removal from internal communication and collaboration platforms necessary to perform her duties," as well as "later exclusion from work-planning meetings and professional opportunities." ECF No. 1-1 ¶ 27. The Complaint further alleges that she experienced "refusal to correct inaccuracies in job documentation and classification processes" and that her "duties were removed or downgraded through alteration of her position description." *Id.* ¶¶ 29–30. However, as with the ADEA claim, there are no allegations in the Complaint tying these allegedly hostile actions to Ms. Morrison's age.

*See id.* In other words, there is no information in the Complaint that would allow for the reasonable inference that Ms. Morrison was targeted due to her age. Therefore, Ms. Morrison's hostile work environment claim fails.

4

Ms. Morrison claims she was retaliated against for "raising concerns about her job duties and position documentation and pursuing reclassification review through HR processes." ECF No. 1-1 ¶ 33. Ms. Morrison does not allege direct evidence of retaliation, so her retaliation claim is subject to the *McDonnell Douglas* burden-shifting framework. To make out a prima facie case of retaliation under the ADEA, a plaintiff must establish the following elements: "(1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him or her; and (3) a causal connection exists between the two events." *Stewart v. Ind. Sch. Dist. No. 196*, 481 F.3d 1034, 1043 (8th Cir. 2007) (quoting *Green v. Franklin Nat. Bank of Minneapolis*, 459 F.3d 903, 914 (8th Cir. 2006)). "Protected activity includes opposing any practice made unlawful by the ADEA." *Gruttemeyer v. Transit Auth.*, 31 F.4th 638, 649 (8th Cir. 2022) (quoting *Kempcke v. Monsanto Co.*, 132 F.3d 442, 445 (8th Cir. 1998)). "Employer conduct that an employee opposes need not in fact be unlawful," but "the employee must demonstrate a good faith, reasonable belief that the underlying challenged action violated the law." *Id.* (quoting *Kempcke*, 132 F.3d at 445).

The Complaint alleges Ms. Morrison (1) notified her supervisor and human resources that her job description was inaccurate, (2) submitted a job reclassification request, (3) "advised" that her central job responsibilities were not evaluated as part of her

position review, and (4) filed a charge of discrimination with the EEOC. ECF No. 1 ¶ 6; ECF No. 1-1 ¶¶ 3–4, 8. Putting the EEOC charge aside for a moment, the Complaint does not allege or even suggest that Ms. Morrison ever complained about discrimination based on age to her employer, supervisors, or other employees, or that she tied any of complaints (1)–(3) to her age. *See id.* These complaints, therefore, do not constitute protected activity and cannot form the basis of a retaliation claim. *Cf. Heisler v. Nationwide Mut. Ins. Co.*, 931 F.3d 786, 798 (8th Cir. 2019) (holding plaintiff failed to allege she engaged in protected conduct where she complained "about her managers misrepresenting her job role and unfairly demoting her to senior director" but did not report "any *unlawful* employment practice that would support retaliation").

Turn next to the EEOC charge, which is "unquestionably statutorily protected activity." *Hester v. Dep't of Treasury*, 137 F.4th 684, 689 (8th Cir. 2025) (citing *AuBuchon v. Geithner*, 743 F.3d 638, 641 (8th Cir. 2014)). Defendants argue that the Complaint does not plausibly allege that the allegedly retaliatory behavior began after she filed her EEOC charge. *See* ECF No. 22 at 6. The Complaint relies solely on temporal proximity to establish the requisite causal connection between the protected activity and adverse action. "Generally, something more than temporal proximity is required to establish the necessary causal connection" between the protected activity and adverse employment action. *Meinen v. Bi-State Dev. Agency*, 101 F.4th 947, 950 (8th Cir. 2024). "While there is no bright line establishing when temporal connection is or is not sufficient to satisfy the causation requirement, an important consideration is the length of time between the protected activity and the adverse action." *Id.* (citing *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 832–33

(8th Cir. 2002)). Indeed, where a complaint relies solely on temporal proximity to show causation, "the time between the protected activity and adverse action must be 'very close.'" *Id.* (quoting *Smith*, 302 F.3d at 833).

The Complaint alleges that Ms. Morrison filed an EEOC charge on August 9, 2024. ECF No. 1 ¶ 6. I construe the Complaint to allege the following retaliatory behaviors: (1) There was "a shift from positive assessments to negative [performance] evaluations following protected activity." ECF No. 1-1 ¶ 10. (2) "[O]n April 9, 2024, Human Resources completed an informal review of Plaintiff's position without reference to Plaintiff's annual work plan, and no change in classification resulted." *Id.* ¶ 11. (3) "Beginning in July 2024, Plaintiff was removed from internal communication and collaboration platforms necessary to perform her duties, resulting in exclusion from team communications." *Id.* ¶ 12. (4) "Pay comparison documentation from 2023 through 2026 reflects disparities between Plaintiff's compensation and that of other employees performing comparable or lesser duties." *Id.* ¶ 13. (5) There were "changes in structure and classification that were inconsistent with Plaintiff's actual duties and responsibilities." *Id.* ¶ 14. (6) "On or about November 13, 2025, Plaintiff's official position description was altered to remove or downgrade core duties she had previously performed." *Id.* ¶ 15. (7) "From 2025 through 2026, Plaintiff was excluded from work-planning meetings and professional opportunities related to her role." *Id.* ¶ 16.

Assuming these actions constitute adverse employment action, the Complaint fails to plausibly allege a causal connection between the allegedly retaliatory conduct and Ms. Morrison's EEOC charge based purely on temporal proximity. The conduct alleged in

statements (2), (3), and (4) occurred, or at least began, *before* Ms. Morrison filed her EEOC charge on August 9, 2024. The filing of the EEOC charge could not have instigated those actions. *See Stewart*, 481 F.3d at 1044 ("[A]lleged retaliation which precedes protected conduct cannot logically be used to show causation because a prior event cannot be caused by a later event."). Statement (6) complains of action that occurred well over a year after Ms. Morrison filed her EEOC charge. The length of time between Ms. Morrison's EEOC charge and the conduct occurring in November 2025 is too great to plausibly infer causation based on temporal proximity alone. *See id.* ("A gap in time between the protected activity and the adverse employment action weakens an inference of retaliatory motive, and . . . given a delay of sufficient length, the causal nexus tends to evaporate." (citation modified)); *Wallace v. Sparks Health Sys.*, 415 F.3d 853, 859 (8th Cir. 2005) (holding that where "nearly a year passed between [plaintiff's] filing of an EEOC complaint and his discharge," plaintiff failed to establish a prima facie case of retaliation). Statements (1), (5), and (7) suffer from a different problem in that they fail to provide a sufficiently specific timeline between the protected activity and allegedly adverse action to assess whether they are close enough in temporal proximity to infer the existence of a causal relationship between them. Accordingly, Ms. Morrison has failed to plausibly allege the requisite causal connection between her EEOC charge and the complained-of conduct and her retaliation claim fails.[5]

---

[5] The outcome would not change even if I considered Ms. Morrison's "Chronological Timeline of Discriminatory and Retaliatory Conduct" attached to her Complaint. *See* ECF No. 1-3 at 4–6.

5

In Count IV, Ms. Morrison claims she received less compensation "than that of other employees performing comparable or lesser duties" and her job was not appropriately classified. ECF No. 1-1 ¶¶ 38–40. This claim is asserted under the EPA and the ADEA. *See id.* In her memorandum in opposition, Ms. Morrison "clarifie[d] that her claim for unequal pay is brought under the ADEA's prohibition against discrimination in compensation." ECF No. 20 at 4. In other words, I understand Ms. Morrison to have dropped her claim of unequal pay under the EPA. *See* 29 U.S.C. § 206(d)(1) (prohibiting wage discrimination based on sex). Because the portion of Count IV brought pursuant to the ADEA mirrors Count I, Count IV also fails on the merits for the reasons described with respect to Count I.

II

Having determined that the Defendants' motion to dismiss will be granted as to Ms. Morrison's original Complaint, turn to Ms. Morrison's motion to amend her complaint to assess whether her proposed changes would affect her claims' plausibility. A federal court must "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Though Rule 15 describes a liberal standard, the right to amend is not absolute. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715 (8th Cir. 2008). A motion to amend may be denied for "compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Id.* (quoting *Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc.*, 406 F.3d 1052, 1065 (8th Cir. 2005)). A proposed

amendment is futile if it could not survive a Rule 12(b)(6) motion to dismiss. *Hillesheim v. Myron's Cards and Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018).

A

Ms. Morrison's Proposed Amended Complaint contains more detail than her original Complaint. The Proposed Amended Complaint alleges that Ms. Morrison has been an employee of DHS for more than 30 years, and she works as an "Office and Administrative Specialist, Senior in the Behavioral Health Administration (BHA) Unit." ECF No. 28 ¶ 1. The Proposed Amended Complaint further specifies that Defendant Sara Rose is DHS's Chief Administrative Officer in the BHA Unit. *Id.* ¶ 3. Defendant Jenny Rennquist is DHS's Contracts Specialist Team Supervisor in the BHA Unit. *Id.* ¶ 4. And Defendant Michael E. Anderson is DHS's Contracts and Compliance Manager in the BHA Unit. *Id.* ¶ 5. The Proposed Amended Complaint alleges that employees younger than Ms. Morrison who "perform[ed] similar or less complex duties within the unit were classified at significantly higher levels and compensated at higher rates" than Ms. Morrison. *Id.* ¶¶ 17–18. Younger employees were hired into positions for which Ms. Morrison had applied in seeking a promotion. *Id.* ¶¶ 18–20. The Proposed Amended Complaint includes a chart comparing Ms. Morrison's job title, years of service, annual salary, and key responsibilities with other DHS employees. *Id.* ¶ 29. The chart contains a total of eight comparators, all of whom make $35,000 more per year than Ms. Morrison. *Id.* Five of the comparators are younger than Ms. Morrison (although the chart does not provide their ages), are employed as a "Human Services Program Rep 2," and have three years of service or less. *Id.* Three of the comparators are older than Ms. Morrison, one is employed as a

"Human Services Program Rep 2" and has one and a half years of service, one is employed as a "Human Services Program Rep 2" and has seven years of service, and one is employed as a "Human Services Program Consultant" and has six years of service. *Id.* Ms. Morrison maintains that she "performs . . . more complex final quality-control functions" than the comparators. *Id.* The Proposed Amended Complaint does not contain an EPA claim, and it clarifies that Defendants Rose, Rennquist, and Anderson are sued solely in their official capacities. *See id.* at 2, 10–11.

B

1

Defendants contend that Ms. Morrison's proposed amendment to her ADEA discrimination claim is futile because she failed to identify similarly situated comparators who were given preferential treatment. ECF No. 34 at 5–6.

"A plaintiff can create an inference of discrimination by showing that she was treated differently than similarly situated persons who are not members of the protected class." *Ingram*, 91 F.4th at 927 (quoting *Yang v. Robert Half Int'l, Inc.*, 79 F.4th 949, 964 (8th Cir. 2023)). The comparators must be "similarly situated in all relevant respects" to the plaintiff. *Id.* at 928 (quoting *Blackwell v. Alliant Techsystems, Inc.*, 822 F.3d 431, 435 (8th Cir. 2016)). This means comparators must have the same job duties, hold same position, and report to the same supervisor as the plaintiff. *See id.*; *Morgan v. A.G. Edwards & Sons, Inc.*, 486 F.3d 1034, 1043 (8th Cir. 2007); *McKey*, 978 F.3d at 600.

Ms. Morrison's alleged adverse employment action appears to be (1) pay disparity between her and younger employees, (2) refusal to reclassify her position, (3) a failure to

promote her, and (4) "isolation and exclusion from work platforms and communications essential to her job duties." *See* ECF No. 28 ¶¶ 17–20, 24, 35–37. Assuming these actions qualify as adverse employment actions, the Proposed Amended Complaint fails to plausibly allege Ms. Morrison was treated differently than similarly situated comparators. The chart contained in the Proposed Amended Complaint shows a wage disparity between Ms. Morrison and other DHS employees. *See id.* ¶ 29. However, the comparators listed in the chart held different positions than Ms. Morrison. Ms. Morrison was a Senior Office and Administrative Specialist, whereas the comparators held the "Human Services Program Rep 2" position. *Id.* To the extent the chart is intended to show that younger employees were promoted over Ms. Morrison, the Proposed Amended Complaint does not allege that Ms. Morrison applied for the position of "Human Services Program Rep 2." And no other specific comparators are identified in the Proposed Amended Complaint. *See id.* ¶ 29. While it refers broadly to younger employees brought on to the "BHA Contract Specialist Team" and hired into "advanced positions within the BHA Grant and Contract Management Team," the Proposed Amended Complaint does not contain other information about these employees. *Id.* ¶¶ 17–20. General references to "younger" employees or team members, are insufficient to plausibly plead the existence of similarly situated comparators under the Rule 12(b)(6) standards. *Cf. Ingram*, 91 F.4th at 929 (holding that "[plaintiff's] allegations that [defendant] subjected her to a stricter level of scrutiny than her coworkers are naked assertions without further factual enhancements" and are therefore "insufficient, even at the motion to dismiss stage, to allow us to draw the reasonable inference that [defendant] discriminated against her"); *Oduro-Amoako v. Delta Air Lines, Inc.*, No. 23-

cv-3400 (ECT/JFD), 2024 WL 3183176, at *7 (D. Minn. June 26, 2024) (finding that plaintiff failed to plausibly plead the existence of similarly situated comparators where plaintiff made "broad claims that other, non-disabled employees of different races, national origins, and sexes were similarly situated and were not subjected to coaching, a police escort, and employment termination," failed to "specify how those employees were similarly situated," and failed to "provide any examples of such employees" (citation modified)).

2

With respect to the amendments to Ms. Morrison's hostile-work-environment claim, Defendants argue that Ms. Morrison fails to plausibly allege facts "tending to show that the alleged hostile work environment was imposed because of her age." ECF No. 34 at 8.

Ms. Morrison's proposed amended hostile-work-environment claim is largely the same as in her original Complaint. The Proposed Amended Complaint does not alter the alleged harassment to which she was subjected. *Compare* ECF No. 1-1 ¶¶ 27–31, *with* ECF No. 28 ¶¶ 39–43. Nor does the Proposed Amended Complaint do a better job of tying these actions to Ms. Morrison's age. *See Moses*, 894 F.3d at 921–22 (stating that a plaintiff must allege that "the harassment resulted from [her] membership in the protected class" (citation modified)). Indeed, the Proposed Amended Complaint seems to indicate that age was *not* the reason for at least some of the Defendants' conduct. The Proposed Amended Complaint alleges that Ms. Morrison was "systematically removed from internal communication and collaboration platforms" "immediately following her internal

advocacy." ECF No. 28 ¶ 23. But the allegations don't connect Ms. Morrison's "internal advocacy" to complaints of age discrimination. Rather, the "internal advocacy" to which she refers appears to be her requests for "administrative reevaluation" and "job reclassification." *See id.* ¶¶ 11–12. Thus, if anything, the allegations indicate she was retaliated against for requesting job reclassification. In sum, Ms. Morrison's proposed amendments to her hostile-work-environment claim are futile.

3

Plaintiff's proposed amendments to her retaliation claim are also futile in that they fail to establish the requisite causal connection between Ms. Morrison's protected activity and adverse employment action. As with the original Complaint, Ms. Morrison relies solely on temporal proximity to establish the causal link between protected activity and adverse employment actions. Ms. Morrison's protected activity is the filing of her EEOC charge.[6] Ms. Morrison filed her EEOC charge on August 9, 2024, and amended her charge on January 31, 2025. ECF No. 35-1 at 5, 10. The Proposed Amended Complaint does not contain any additional facts to strengthen the temporal relationship between the filing of Ms. Morrison's EEOC charge on August 9, and subsequent adverse employment actions. Even taking into account the amendment to the EEOC charge, the Proposed Amended Complaint would not pass Rule 12(b)(6) muster. The Proposed Amended Complaint

[6] Ms. Morrison appears to believe that her internal requests for "job reclassification" and "administrative reevaluation" constitute protected activity. *See* ECF No. 28 ¶¶ 11–12, 45. However, as discussed above, because there are no facts to indicate that Ms. Morrison raised the issue of age discrimination in her reclassification and/or reevaluation requests, they do not constitute protected activity. *See Gruttemeyer*, 31 F.4th at 649.

alleges that on November 13, 2025, Ms. Morrison's position description was altered to remove or downgrade core duties, and "[f]rom 2025 through 2026, [Ms. Morrison] was continuously excluded from work-planning meetings and professional advancement opportunities related to her contract role." ECF No. 28 ¶¶ 26–27. The change to Ms. Morrison's position description occurred nine months after she amended her EEOC charge, and it is unclear when the exclusion from meetings and professional opportunities began. This is insufficient to establish the requisite temporal connection. *Cf. Trammel v. Simmons First Bank of Searcy*, 345 F.3d 611, 616 (8th Cir. 2003) ("Mr. Trammel received the evaluation more than two months after he filed the EEOC charge. Another month passed before he was placed on leave, and about a month later he was fired. In none of these instances does Mr. Trammel offer any evidence to show a causal connection between the EEOC charge and the action taken by Simmons, and we conclude that the time interval of more than two months is too long to support an inference of causation.").

*

There is a question whether the Complaint should be dismissed with or without prejudice. Courts ultimately have discretion to decide between a with-prejudice and without-prejudice dismissal. *Paisley Park Enters. v. Boxill*, 361 F. Supp. 3d 869, 880 n.7 (D. Minn. 2019). A dismissal with prejudice is appropriate when a plaintiff has shown "persistent pleading failures" despite one or more opportunities to amend, *Milliman v. County of Stearns*, No. 13-cv-136 (DWF/LIB), 2013 WL 5426049, at *16 (D. Minn. Aug. 12, 2013), *R. & R. adopted* (D. Minn. Sept. 26, 2013), or when the record makes clear that any amendment would be futile, *Paisley Park*, 361 F. Supp. 3d at 880 n.7. On the other

hand, when a plaintiff's claim "might conceivably be repleaded with success," dismissal without prejudice may be justified. *Washington v. Craane*, No. 18-cv-1464 (DWF/TNL), 2019 WL 2147062, at *5 (D. Minn. Apr. 18, 2019), *R. & R. adopted*, 2019 WL 2142499 (D. Minn. May 16, 2019). Here, the Proposed Amended Complaint falls into the former category. Ms. Morrison has effectively had two opportunities to attempt a successful pleading, and she has not identified facts or law that might be included in a third version of the pleading to overcome the dismissal-worthy problems of the Complaint or the Proposed Amended Complaint.

**ORDER**

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Defendants' Motion to Dismiss [ECF No. 5] is **GRANTED**.
2. Plaintiff's New Motion to Amend the Complaint [ECF No. 27] is **DENIED**.
3. This action is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 14, 2026

s/ Eric C. Tostrud
Eric C. Tostrud
Chief Judge, United States District Court